## KEENEY v. LEAS AND LYON,

1. NOTARY PUBLIC. A notary public is a public officer, and when acting *de facto* his acts affecting third persons cannot be collaterally assailed.

2. DE FACTO OFFICER. A public officer duly appointed or elected, but who has in some particular failed to qualify in the manner prescribed by law, acts *de facto*, and his acts as to third persons are entitled to credit.

3. SAME. Where a notary public was duly appointed by the executive, but failed to file a bond in the manner prescribed by law, it was held that he was an officer *de facto* but not *de jure.*

*Appeal from Polk District Court.*

WEDNESDAY, JANUARY 14, 1863.

ON the 30th of July, 1861, John C. Turk was appointed by the Governor notary public in the county of Polk. Within a few days thereafter he took the necessary oath,

executed and filed his bond of office, and entered upon the discharge of his official duties. About the same time, and prior to the 1st day of August, 1861, he left in the recorder's office (with a person writing therein, but neither the recorder nor his deputy), his commission to be recorded, but did not pay the fees therefor. These fees were paid on the 11th of March, 1862, and then, and not before, was the said commission duly filed for record.

The depositions of certain witnesses were taken before this notary, on the part of the plaintiff, commencing on the 1st of August, 1861, and closing on the 14th of March, 1862, the examination of the last witness commencing on the 6th of March. Defendants appeared by counsel and cross-examined, but they had no knowledge at that time, nor until long afterward, that said notary had failed to file his commission for record.

At the May Term, 1862, of the District Court, defendants moved to suppress all these depositions, upon the ground, substantially, that they were not taken before a competent officer, or one having authority to administer an oath.

The motion was sustained, and plaintiff appeals.

*C. C. Cole* for the appellant.

The validity of the acts of an officer *de facto*, although he may not at the time be an officer *de jure*, cannot be collaterally assailed, whether he be acting under an appointment or by virtue of an election. *Greenleaf* v. *Low*, 4 Denio, 168; *Weeks* v. *Ellis*, 2 Barb., 320; *The People* v. *Cook*, 4 Seld., 67; *S. C.*, 14 Barb., 259; *Gourley* v. *Hawkins*, 2 Iowa, 75; *Wilcox* v. *Smith*, 5 Wend., 231; *McCoy* v. *Curtice*, 9 Id., 17; *Potter v. Luther*, 3 John., 431; *Bucknam* v. *Ruggles*, 15 Mass., 181; *Nason v. Dillingham*, Id., 170; *The People* v. *Collins*, 7 John., 549; *The People* v. *Stevens*, 5 Hill, 616; *The People ex rel.* v. *Bartlett et al.*, 6

Wend., 422; 1 Phill. Ev. (4th Am. Ed.), 592, and note on 593; *Putchan et al.* v. *The People*, 1 Gilm., 529; *Cook* v. *Hall*, Id.; 580; *Culbertson* v. *The City of Galena*, 2 Id., 130; *McClusky* v. *McNeely*, 3 Id., 582; *Brown* v. *Lunt*, 37 Me., 423; *Plymouth* v. *Painter*, 17 Conn., 585; *Tucker* v. *Aikens et al.*, 7 N. H., 113; *Fowler* v. *Bebee et al.*, 9 Mass., 231; *Maloy* v. *Tunentine*, 8 Ind., 201; *Jones* v. *Gibson*, 1 N. H., 268; *Johnson* v. *Wilson et al.*, 2 Id., 205; *The Town of Londonderry* v. *The Town of Chester*, 2 Id., 268.

*Casady & Polk* for the appellee.

I. John C. Turk, before whom the depositions were taken, was not at the time he took them commissioned as a notary public, nor had he any authority as such to take depositions or administer oaths to witnesses. Rev. 1860, §§ 207, 208. The witnesses were not legally sworn, and could not be punished for perjury. 1 Greenl. Ev., § 328; Rev. 1860, §§ 4079, 4271; Bouv. Law Dict., Tit. Perjury; Bla. Com., 4th book, 137, note 35; Hawk. Pl. Cr. (6 Eng. Ed.), 321, § 4; 2 Chit. Cr. Law (4th Am. Ed.), 312, *a;* Wheaton Am. Cr. Law (3d Id.), 748; 3 Stark. Ev., 1135; 3 Greenl. Ev., § 190; Roscoe's Cr. Ev., 808; 2 Bishop's Cr. Law, § 864, and the cases there cited.

II. Officers are divided into public and private. 5 Bac. Abr., 180, Tit. Office and Officers; Tom. Law Dict., Tit. Office; Bouv. Law Dict., Tit. Office.

1. A public officer is one who exercises a public employment, and whose duties relate to individuals as contradistinguished from the public. They have some fixed place of business, and on death or removal the office survives. A public office has an existence above and independent of the incumbent.

2. A private officer is one who exercises a private employment, and whose duties relate to individuals as contra-

distinguished from the public. On the death of the incumbent the office dies. It has no existence above and independent of the incumbent. 5 Bac. Abr., *supra.*

The rule for which appellant contends applies to public officers, while a notary public is a private officer. 1 Phil. Ev., 432; 1 Greenl. Ev., § 83; 3 Bouv. Inst., 340 (§ 3).

WRIGHT, J.—The statute (Laws of 1855, Rev. 207, 208), provides that:

"Every notary public, whose commission bears date after the 1st day of May next, shall comply with the following conditions:

"1. Before entering upon the discharge of his duties, he shall give bond to the State of Iowa, in the penal sum of five hundred dollars, conditioned for the true and faithful execution of the powers and duties of his office, with two or more sureties, to be approved, on said bond, by the clerk of the District Court of the proper county.

"2. On the approval of said bond by said clerk, said notary shall have his commission recorded by the recorder of deeds of his county, and shall pay to the clerk of the District Court the sum of one dollar.

"Said notary shall then be deemed commissioned, and not before."

It is claimed that, as the officer had failed to have his commission recorded prior to taking these depositions, he had no authority to act; that one of the guaranties for the truth of the testimony given, to wit, the penalty attached to the crime of perjury is wanting, because the notary had no power to administer an oath, and that every party has a right to demand that the testimony of his adversary shall be given under such circumstances as that a conviction of perjury might be had if the witnesses swore falsely. On the other hand, it is insisted, that this notary was at least an officer *de facto;* that as such his acts cannot be col-

laterally assailed, whether acting under appointment or by virtue of an election; and that, though not an officer *de jure*, his official acts are entitled to credit as to third persons. In response to these positions, appellees claim that a notary is a private and not a public officer, and that the rule contended for has therefore no application.

In some respects it is true that a notary, as compared with a justice of the peace, judge of probate, commissioner of elections, or the like, is not a public officer. That is to say, he holds no courts; is not required to hold his office open at any particular time or place; and is not required to deliver his records and papers to any one as his successor. But he is, nevertheless, a public officer in the sense that his office affects the people generally, and does not concern alone a particular district or private individuals. In this country all offices are public, except such as, though called offices, are, nevertheless, employments of a private nature. To illustrate, by the case put by Mr. Bouvier (Dict., Tit. Office), we speak of the president of a bank, or a director of a corporation as an officer, but the office is private and not public. Aside from such cases, however, (which those just named serve to illustrate,) all officers are public. And that this is true as applied to a notary, is shown from the antiquity of the office, the nature of their duties, and the fact that their acts have always been respected by the custom of merchants and the courts of all countries. And when we add that they are appointed and commissioned by the executive; that they are required to give bond to the State, and take an oath; that they are subject to removal by the Governor; and upon their removal or resignation are required to deposit their records and official papers with the clerk of the proper county, their public character in this State is established beyond all reasonable controversy. Then, again, while some of his acts might possibly be such as to give him the character of

a private officer, it would by no means follow that when in the discharge of other duties, the same character would attach.

Thus regarding the office, we are of the opinion that if he is an officer *de facto*, though not *de jure*, his acts cannot be collaterally assailed. The question involved is one affecting third parties, and in determining it the court will not stop to determine whether the witnesses whose depositions were taken, could or not for false swearing be convicted of perjury. Then the public has an interest in it, and experience has justified the rule, that if the officer is in his place by appointment or election, and proceeds in the regular discharge of his duties, though he has not in all respects, in qualifying, complied with the statutory provisions, his acts are entitled to credit. The power to act is derived from the appointment or election; and, therefore, when it is once shown that he had this authority (and this is presumed in a public officer who is found in the discharge of his duties), a failure to comply with all the directory provisions of the statute in relation to his qualification, will not, in a collateral proceeding, invalidate his acts.

Our statute does not declare that the acts of the notary who fails to comply with the provisions above cited, shall be null and void, but provides for a penalty. Under such a statute no case has come under our observation which holds invalid the acts of the officer *de facto*. And the provision of our statute, that when certain things are done, he shall be " deemed commissioned and not before," means no more than that then he will be an officer *de jure*. And it is because officers have failed to comply with similar directory provisions, and while acting in good faith in the discharge of their official duties, have transacted business materially affecting the public and third persons, that public policy has dictated the distinction between an officer *de facto* and one *de jure*, and given validity to the acts of the

former, until his right to discharge the duties is by some direct proceeding denied. Thus in this case it is apparently as much the duty of the officer to pay the sum of one dollar to the clerk before he should be " deemed commissioned," as that he should have his commission recorded. And yet would it be pretended that all of his acts would be invalid, because of *such* failure. It seems to us that to state such a proposition is to answer it.

Without now entering upon other views, which but strengthen our conclusion that the court below erred in suppressing these depositions, and without citing and discussing at length the authorities bearing upon the general question (which, however, will be found collected in the very full briefs of counsel), we unite in the opinion that the judgment must be

Reversed.