JOHN C. APLIN et al., .appellants, v. CLINTON COUNTY, IOWA, BOARD OF SUPERVISORS et al., appellees.

## No. 51310.

(Reported in 129 N. W.2d 726)

JULY 16, 1964.

REHEARING DENIED SEPTEMBER 22, 1964.

Jurgemeyer & Eddy, of Clinton, for appellants.

S. W. Rasche, Jr., of Clinton, for appellees.

LARSON, J.—In September 1962 respondent Board of Supervisors of Clinton County, Iowa, undertook proceeding to condemn a portion of petitioners' real estate for relocation of Secondary Road No. 4 for the use and benefit of the county. The respondent sheriff appointed a commission, as provided by section 472.4, Code of Iowa, 1962, which commission visited the premises and assessed the damages. Upon application of the owner-petitioners, the district court caused a writ of certiorari to issue to respondents to review the condemnation proceedings. Trial resulted in an adjudication that the proceeding was valid and an order annulling the writ. Petitioners appeal.

Appellants pleaded the appraisal and assessment of damages was invalid because the commissioners who made it failed to make a full, intelligent and complete inquiry into the damages, that the inquiry by the commissioners was so deficient, incom-

petent and negligent, that the acts in fixing the assessment of damages were illegal, and that the taking was without jurisdiction. Error is predicated upon the finding and conclusion of the trial court that the inquiry of the commission was sufficient, its appraisal procedure adequate, and its assessment of damages made substantially in accord with statutory requirements.

Of course compliance with statutory provisions of this nature is essential. Miller v. Palo Alto Board of Supervisors, 248 Iowa 1132, 1134, 84 N.W.2d 38; 29 C. J. S., Eminent Domain, section 295; 18 Am. Jur., Eminent Domain, section 312. As long as the use is a public use, the courts are not concerned with the wisdom of a law that delegates the right to condemn. But it is for the courts to say whether the condemnor has brought itself within the law so that it is empowered to condemn. While statutes delegating the power of eminent domain are strictly construed and restricted to their clear expression and intention, the usual presumptions apply in favor of their constitutionality, and the courts should construe them, if possible, to sustain their constitutionality. 18 Am. Jur., Eminent Domain, section 26, page 651.

Chapter 472, Code of Iowa, 1962, governs procedure under the power of eminent domain. Section 472.14 provides: "The commissioners shall, at the time fixed * * * view the land sought to be condemned and assess the damages which the owner will sustain by reason of the appropriation; * * *. Where the land sought to be condemned is a part of a larger tract of land, and in making such assessment at the request of the condemnee, the commissioners shall divide the damages into two parts, namely, the value of the land (including improvements thereon), sought to be condemned, and the consequential damages resulting to the owner from such condemnation and appropriation. * * *." Thus, the statute directs the commissioners to view the land and assess the damages, considering both the actual taking and the consequential damage if requested.

Article I, section 18, of the Constitution of Iowa, provides: "Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed * * *."

Amendment 14 to the United States Constitution requires due process in the taking.

Appellants contend the record discloses the appraisal and assessment of damages was so deficient, incompetent, and negligent that the acts of the commission were in excess of its subject-matter jurisdiction as granted in chapter 472 of the Code, and acted in violation of Article I, section 18, of the State Constitution, and Amendment 14 to the Constitution of the United States.

Respondents deny any such delinquencies and contend certiorari was not a proper review proceeding, that appeal was appellants' proper remedy and, since an appeal had been taken, that was their only recourse. This, it is said, is especially true since it appears their principal complaint is the inadequacy of the damage assessment. The trial court seems to have agreed with all these appellee contentions, but we find it necessary only to concur in the determination that the commissioners substantially complied with the statutory requirements of view and inquiry, and that the county did not act in excess of jurisdiction in the taking.

I. It is well settled in this state that certiorari is available in condemnation cases involving jurisdictional questions, substantial departures from statutory requirements, and other illegalities by a lower tribunal, board or commission. Miller v. Palo Alto Board of Supervisors, supra; Abney v. Clark, 87 Iowa 727, 730, 55 N.W. 6, 7; 30 C. J. S., Eminent Domain, section 374. Rule 306, R. C. P., provides: "A writ of certiorari shall only be granted * * * where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded its or his proper jurisdiction or otherwise acted illegally."

We fully discussed the meaning of that rule in Massey v. City Council of Des Moines, 239 Iowa 527, 31 N.W.2d 875, and held the provisions limiting certiorari to cases where the respondent is exercising judicial functions do not mean judicial functions in the strict or technical sense in which the term is used when applied to courts, and that certiorari will lie if the act is of a quasi-judicial character. We also pointed out therein the elimination of the requirement that there be no other plain,

speedy or adequate remedy in rule 308 indicates a broadening of the scope of review by certiorari.

In 30 C. J. S., Eminent Domain, section 373, it is stated: "The writ of certiorari may be available as a mode of review in condemnation proceedings in cases involving want or excess of jurisdiction in the trial court or tribunal, illegality or substantial irregularities in the proceedings, or the due exercise of statutory powers; * * *."

 Ordinarily the reviewing court has discretion to grant or refuse the writ as justice seems to require. See Hohl v. Board of Education of Poweshiek County, 250 Iowa 502, 94 N.W.2d 787; National Ben. Acc. Assn. v. Murphy, 222 Iowa 98, 269 N.W. 15.

In section 374 of 30 C. J. S., Eminent Domain, we find this statement: "Where * * * an appeal waives all questions as to irregularities in the initial proceedings [as it does in Iowa], errors in the proceedings of the commissioners are properly reviewable by certiorari." Stellingwerf v. Lenihan, 249 Iowa 179, 85 N.W.2d 912, points out the fact that an appellant cannot raise legal questions on appeal in a condemnation action. Section 472.23, Code, 1962.

In the early Iowa case of Abney v. Clark, supra, 87 Iowa 727, 730, 55 N.W. 6, 7, a writ of certiorari issued to the board of supervisors to review the validity of an allowance of damages fixed by appraisers whose appointment was illegal. Upon the question as to the sufficiency of the appeal remedy, this court said: "It must be remembered that this right of appeal is given *in addition* to the right of an appraisement made under a proper observance of the law. The claimant is entitled, first, to a due appraisement, which he may accept, if he so elects, or from which he may appeal, if he deems it inadequate." (Emphasis supplied.) It was there held that failure to observe the law as to the time of the appointment of the commissioners was an illegality that affected the final action of the board in establishing a road.

 We are satisfied in the case at bar that the alleged violation of the statutory duties of the commissioners, if proven, might well affect the owners' rights to have "just compensation" fixed at the time of taking. Thus a constitutional question would

appear. Furthermore, if the commission failed to give due consideration to the elements of damage suffered by the condemnees, failed to fully, intelligently and competently inquire into the damages they suffered by this proposed taking, as alleged by petitioners, the proceedings should be reviewed and may be declared void in a certiorari action. Only a valid and legal appraisement can sustain the board's action of taking. Here the commission's acts of inquiry are those which go to the determination of a right, which right is entitled to the protection of the courts, i.e., a constitutional right to receive just compensation at the time one's land is taken. National Ben. Acc. Assn. v. Murphy, supra, 222 Iowa 98, 101, 269 N.W. 15. It must, therefore, be concluded certiorari was the proper procedure to review the commission's compliance with statutory and constitutional requirements for a valid condemnation.

II. This brings us to appellants' principal contention. Did the commission fail to fully, intelligently and competently inquire into the damages suffered by appellants in this condemnation, and fail to follow the statutory requirements, or did it execute its duties in such a deficient, incompetent and negligent manner that its determination of the condemnees' damages failed to meet the designs of the constitution and the statutes?

Obviously it is necessary for us to examine the evidence of the commission proceedings as disclosed by the record presented to the trial court. Pursuant to their appointment and qualification, the members of the commission met at a road intersection on the northeast corner of the appellants' farm to view the premises and make inquiry as to damages the owners would suffer by this taking. They were thereafter accompanied by Mr. Aplin, one of the appellants, his attorney Mr. Jurgemeyer, Mr. Cornish, a county supervisor, and Mr. Tucker, the county engineer. Standing upon the road adjacent to and abutting appellants' property, they viewed the staked-out strip or tract to be condemned, which extended southwest across a 40-acre field, 60 percent of which was under cultivation. Approximately 5.04 acres of the farm total of 230 or 240 acres was to be taken. From this high point the appraisers could also see the farm buildings about a half mile away, but could not see their color,

condition, size, etc. However, pictures of these buildings were later presented to them for consideration. The farmland was all visible and extended about a half mile westward beyond the buildings. It is true the appraisers did not walk over this part of the cultivated land or examine the interior of the buildings, and that only one of their number went into the abutting field of beans to examine the soil. However, the commissioners did examine an appraisal submitted by the owners which included a soil analysis. (Exhibit C, page 6, Schedule C—Loots appraisal.) After viewing the farm from the northeast corner thereof, the commissioners proceeded southward toward the timberland next to the river. They walked through the underbrush to the lower end of the strip being taken at that time. After viewing this timber tract, they proceeded to the City Hall of the City of Toronto nearby. There they examined aerial photographs of the real estate involved, a full and complete real-estate appraisal prepared for them by condemnees' own appraiser, Mr. Loots, and were favored with statements from Mr. Jurgemeyer concerning the value of the real estate. The county offered no evidence and, when the interested parties departed, the commissioners discussed the various damages they felt would result from this taking. They discussed the problem of access to and from the 40-acre field divided in half by the proposed diagonal 100-foot right-of-way, the problem of short rows in the remainder of this 40-acre field, discussed the problem of refencing and drainage. They gave consideration to any severance damage that would result from the loss of 5.04 acres from the farm of approximately 235 acres, and considered the before-and-after-taking values of the farm. It also appears they took into consideration information given them by the county engineer while on the inspection trip to the effect that, in making offers for land needed for road purposes, five times the assessed valuation was used plus an additional allowance for fence-moving. They heard his statement as to the appraised value of this land for tax purposes. After some twenty minutes of deliberation, the commissioners fixed the owners' damages at $2166.

In considering the adequacy of their determination of

values, it further appeared one of the appraising commissioners lived in the immediate vicinity and owned real estate adjacent to the land sought to be condemned. He was a businessman in Toronto well acquainted with the value of real estate in that locality and had heard conversation as to the price paid and received for farms nearby. He had driven by this place several times a month in the past, had seen high water over part of this land in the spring and fall. He was familiar with the crops grown on this farm. All this information he conveyed to the other members of the commission during their deliberations. At least one other appraiser had visited, hunted and fished on this land, and all were experienced in real-estate valuations.

Little consideration was given to the condition of the farm buildings, for all the commissioners expressed the thought that since the taking was of such a small part of the farm, that condition was of little importance here. They expressed a belief that there would be little or no severance loss and that, regardless of the condition of improvements, the before-and-after-taking value per acre would not greatly vary. Some felt the value of the farm per acre before-and-after taking would be the same.

From this testimony it clearly appears all the elements of loss or possible valuation changes *were* considered by the commissioners in arriving at what they believed was the owners' loss. We cannot say this inquiry and consideration was so negligently or incompetently done as to void the appraisal or cause the loss of jurisdiction of the subject matter involved. On the other hand, it would appear here that there was a substantial compliance with the statutory requirements and due consideration was given all damage elements involved.

The appellants rely upon Walters v. Houck, 7 (Clarke) Iowa 72, 74, 77. This 1858 case states the rule applicable in proceedings to take private property for public use. The court there said:

"And the rule is well settled, that the statute requirements must be fully and fairly obeyed. * * * there must be a full, intelligent, and competent inquiry into the question of the individual's loss or damage; and that if the inquisition is exe-

cuted in a deficient, incompetent, or negligent manner, so as to show that the party's exposure to damages has not been properly inquired into, it does not meet the designs of the constitution and the law."

We cannot improve upon that statement, and find it applicable here with a different result from that in the Houck case. There the court properly found that "the inquisition was conducted in a careless, negligent, and unintelligent manner, and ought therefore to be set aside." In that case the appraisers failed to consider that authorization of a milldam across the Nodaway River which would cause water to cover "a party's coal bed, stone quarry, or spring is, or may be, as truly and as greatly a damage to him, as the flowing [of] his grounds."

In other words, in making the appraisement some very real and actual losses were not considered by the commissioners in fixing the damages, and the appraisal was therefore vitally defective. Had the appraisers considered these other elements of damage but fixed the amount of the loss too low, an adequate remedy would have been an appeal, but when the inquiry itself showed a lack of full consideration, the validity of the condemnation might well be successfully questioned by certiorari. Abney v. Clark, supra, 87 Iowa 727, 55 N.W. 6; Reter v. Davenport, R. I. and N.W. Ry. Co., 243 Iowa 1112, 1124, 54 N.W.2d 863, 35 A. L. R.2d 1306. We think, therefore, the trial court in the instant case was correct when it held that, although the farm and the buildings were not examined foot by foot, the viewing was sufficient, especially when that view was supplemented by a carefully analyzed appraisal regarding soil, crops, buildings and usage, and by relevant photos and maps. We conclude there was sufficient inquiry here upon which a legal appraisal could be made under the existing Iowa law.

We do not pass upon the sufficiency of the award. It is our understanding that an appeal has been perfected raising that issue, and of course at that time the owners may have the amount of the award reviewed as provided by chapter 472, Code of Iowa, 1962.

. III. In view of our conclusions in the above division, the

judgment of the trial court in annulling the writ must be sustained.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.