Mary KOSS, Appellant,

v.

**CITY OF CEDAR RAPIDS,
Iowa, Appellee.**

No. 61294.

Supreme Court of Iowa.

Nov. 22, 1978.

John D. Randall, Cedar Rapids, for appellant.

David F. McGuire, City Atty., Cedar Rapids, for appellee.

Considered by REES, P. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

REES, Justice.

This is an interlocutory appeal by the plaintiff Mary Koss from the order of the trial court overruling her motion for summary judgment in an appeal to the District Court of Linn County in a condemnation proceedings involving 24.9 acres of land. We find no error and affirm the trial court.

The plaintiff was the owner of a tract of land in Cedar Rapids consisting of approximately 31 acres in toto. On July 1, 1974 the defendant City filed its application for the condemnation of 24.9 acres of plaintiff's property. The condemnation commissioners viewed the premises and awarded the plaintiff $50,000 for the taking. Plaintiff filed her notice of appeal in the district court on August 15, 1974, naming the City of Cedar Rapids, Iowa, and Walter H. Grant, Sheriff of Linn County, as defendants.

Plaintiff's petition was filed on September 4, 1974. In her petition she asserted the damage award by the commissioners was inadequate and represented the true value of the property condemned to be $150,000. The City of Cedar Rapids answered, and the other defendant filed no responsive pleadings.

On April 23, 1975, following plaintiff's application therefor, the court ordered the City to pay to the plaintiff $40,000 out of the award, such payment to be without prejudice to the plaintiff's right to prosecute her appeal.

On May 11, 1976 plaintiff amended her petition, asserting the notice of condemnation was defective in that it was not directed to or served on Linn County, a tax lienholder against the condemned property. The notice of condemnation had been directed to the plaintiff and to "Linn County Court House". Attached to the notice was the application for condemnation, which properly listed Linn County as the holder of a tax lien on the premises.

On January 19, 1977 the plaintiff filed a second amendment to her petition, alleging in three separate divisions: (1) the condemnation application had been filed with Judge Ansel J. Chapman rather than with Chief Judge Harold D. Vietor, and that the compensation commissioners had been appointed by Judge Chapman rather than by Chief Judge Vietor, as directed by § 472.4, The Code; (2) the property had been improperly identified in the condemnation application and notice; and (3) notice had not been directed to a lessee and sublessee of the property in violation of § 472.9, The Code. Plaintiff asserted the district court lacked jurisdiction to consider the appeal and asked that the condemnation proceedings be declared null and void. In the defendant's answer all of the material allegations of the amendment were denied, and the defendant City affirmatively asserted plaintiff had waived consideration of the issues raised by acquiescing in the condemnation proceedings and by accepting the payment of $40,000 of the award referred to above.

On February 4, 1977 plaintiff moved for summary judgment based upon all of the amendments to her petition filed on May 11, 1976 and January 19, 1977, contending that the condemnation should be declared null and void and the property restored to her. Defendant City filed a resistance, asserting: (1) notice of the condemnation was properly served on the Linn County Auditor; (2) the chief judge of the district had properly appointed Judge Chapman as assistant chief judge; (3) the property was described with sufficient definiteness so as to give notice and the correction of the description in the application for condemnation was made prior to the award in the proceedings; (4) that there was some ques-

tion as to the status of the two parties named by plaintiff as a lessee and sublessee of the property, and that the nature of their interest in the premises necessarily involved disputed questions of fact; and (5) the plaintiff waived the issues asserted in the amendments to the petition by participating in the condemnation proceedings and applying for and accepting the $40,000 advance payment out of the award. In a further resistance to the motion, the defendant City asserted the issues involved were moot, since the golf course and park project on the land had been completed. Affidavits and counter-affidavits were appended to both the motion for summary judgment and the resistance thereto. The affidavit of plaintiff's attorney, George C. Claassen, is in conflict with the substance of the affidavit of Deputy Sheriff Webster as to when the range number was corrected in the description of the property in the notice of condemnation.

The documents submitted to the court at the inception of the condemnation proceedings were addressed to Chief Judge Vietor but were filed with Judge Chapman. A description of the property to be condemned attached to the condemnation notice identified the property as being located in range 83 rather than in range 84 as the premises should have been described, although the figure "84" had been written in by hand. The legal description above the plat map omitted a line from the legal description. On the other two exhibits attached to the notice, the correct range number was cited, and the plat map correctly showed the property to be condemned. In addition, the legal description of the remainder of the tract owned by plaintiff which was not subject to condemnation was accurately described.

Plaintiff's motion for summary judgment was overruled by the court, and in its ruling the court said: (1) Linn County was identifiable from the record as a real defendant and if Linn County was personally served with notice any misnomer would not void the proceedings; (2) appointment of the compensation commissioners by Judge Chapman was a judicial act challengeable

only by way of certiorari; and (3) substantial factual disagreements existed as to the issues, particularly the question of the proper description of the land and the service of notice on the alleged lessee and sublessee.

We granted plaintiff's application for permission to perfect an interlocutory appeal on January 6, 1978.

The following issues are presented for review:

(1) Whereas § 472.9, The Code, requires a notice of condemnation to name record lienholders, and Linn County held a tax lien on plaintiff's property, did the defendant City comply with the statute when its notice of condemnation was addressed to the plaintiff and "Linn County Court House, Cedar Rapids, Iowa 52401"? If noncompliance is found, do the facts that proper service of notice was made on the Linn County Auditor, and that attached to the notice was a condemnation application which listed Linn County as the holder of a tax lien, allow a conclusion that the noncompliance was nonprejudicial to the rights of the plaintiff?

(2) Did the City satisfy the requirement of § 472.3, The Code, that the condemnation application be filed with the chief judge of the judicial district, who, under the provisions of § 472.4 may then appoint compensation commissioners where the application was filed with the assistant chief judge who appointed the commissioners? Is such action subject to attack by way of a direct appeal in the district court?

(3) Did the defendant City comply with §§ 472.9 and 472.3, The Code, which require the application for condemnation to contain a description of the land, when a legal description of the property attached to the application listed an incorrect range number and omitted one of the boundary lines? Was the statute satisfied by the insertion of the correct range number in two places on the exhibits attached to the application and when a plat diagram correctly identified the property?

(4) Does the plaintiff have standing to challenge the adequacy of notice to other interested parties in the condemnation proceedings?

I. The plaintiff asserts the trial court erred in overruling her motion for summary judgment on any and all of the grounds asserted therein. Therefore, if the trial court is found to have been incorrect in its ruling on any of such grounds, it must be reversed and this case remanded for an appropriate judgment.

The plaintiff first asserts a jurisdictional defect in that she alleges there to have been inadequate notice to Linn County for the reason that the notice was directed to "Linn County Court House". The defendant City answered, alleging that actual service was had on the Linn County Auditor, the authorized officer for service on the County under rule 56.1(i), Rules of Civil Procedure. The defendant further asserts that a copy of the condemnation application was attached to the notice sent to Mrs. Koss and the auditor in which the holder of a tax lien against the property was properly identified as "Linn County, Iowa".

Section 472.9, The Code, requires the giving of notice to "each person whose land is to be taken or affected and each record lienholder or encumbrancer thereof . . ." Before reaching a consideration of the merits of plaintiff's contention regarding the adequacy of the notice served upon Linn County, we must inquire into the standing of the plaintiff to challenge the adequacy of notice to others.

■ Plaintiff alleges no action prejudicing her rights under § 472.9, The Code. This effectively distinguishes the major case relied upon by the plaintiff, *Bourjaily v. Johnson County,* 167 N.W.2d 630 (Iowa). Here notice was given to the plaintiff in compliance with the statute. There is no indication that plaintiff's then existing rights in the property were in any way diminished by such service. Any interests which might have been diminished by the alleged faulty notice were the interests of Linn County. Any improper joinder would appear to be properly subject to attack only by those whose interests are adversely affected, as was the case in *Bourjaily, supra.* The separate and identifiable nature of the interests involved is illustrated in Nichols

on Eminent Domain, 1976 Ed., Vol. 6A, § 26.1134, pp. 2–97 and 2–98:

"It is generally held that, when the condemnation of land is effected by judicial decree, failure to designate in the petition (and to make a party respondent) the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceedings ineffectual to transfer *such interest* to the condemnor, but does not invalidate the entire proceedings or affect the validity of the taking of other interests, the owners of which were properly designated and made parties." (Emphasis supplied.)

Absent prejudice to the rights of the plaintiff, any irregularity in the notice given to third parties can be challenged only by those whose interests are adversely affected. To conclude otherwise would be in contravention of the traditional limitations on judicial subject matter, most particularly those relating to standing and justiciability. See *Luse v. Wray,* 254 N.W.2d 324, 329 (Iowa); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

■ This conclusion also disposes of the issue concerning the adequacy of notice to tenants on the property. While the tenants are entitled to notice and compensation for their interest in the property taken, *Bourjaily, supra,* the interests of the plaintiff and the tenants are separate, *Korf v. Fleming,* 239 Iowa 501, 32 N.W.2d 85. Any irregularity in the notice to the tenants is subject to attack by the tenants and cannot be collaterally attacked by plaintiff.

■ Even if we were to reach the merits on this issue, we would be constrained to affirm the ruling of the trial court. The trial court, in ruling on the motion for summary judgment, found:

". . . a review of the record reflects a misnomer insofar as the defendant Linn County, Iowa, is concerned, and further reflects that there is a fact question involved as to whether or not service was appropriately had on the Linn County Auditor. * * * In regard to the mis-

nomer, it appears to the Court that the real defendant is identifiable from the record before the Court and if Linn County, Iowa, the real defendant, has actually been personally served the variation in the name would not be fatal."

The emphasis and requirement of § 472.9, The Code, appears to be on the notice to all interested parties as therein defined, and the trial court was not in error in ruling that the factual question of actual notice was yet to be decided and that the plaintiff was not entitled to summary judgment as a matter of law. If upon trial on the merits, such notice is found to have been given, then it may well be that the mandate of § 472.9 has been satisfied for, as we noted in *Bales v. Iowa State Highway Commission,* 249 Iowa 57, 86 N.W.2d 244, notice must be given in substantial compliance with the statute. *Bourjaily v. Johnson County, supra,* is also supportive of such a substantial compliance standard.

We perceive no merit in the first issue stated for review.

■ II. The trial court in its ruling on plaintiff's motion for summary judgment held that the appointment of the condemnation commission by Judge Chapman was a judicial act and that the only means by which such an act may be attacked is by a writ of certiorari sought specifically for such purpose, citing *State v. Johann,* 207 N.W.2d 21 (Iowa). The appointment of the condemnation commissioners was made by Judge Chapman acting as assistant chief judge of the Sixth Judicial District, pursuant to appointment by Chief Judge Harold D. Vietor on July 12, 1972. The plaintiff challenged the authority of Judge Chapman to so act without having been reappointed assistant chief judge by Chief Judge Vietor upon the reappointment of Chief Judge Vietor.

The trial court found, and counsel for the defendant argues, that any challenge to the order of appointment should have been by certiorari as provided in *State v. Johann, supra. Johann* involved the question as to whether certiorari would lie to challenge the acceptance of an application for con-

demnation by the chief judge of the judicial district under § 472.3, The Code. We found certiorari to be a permissible means to challenge the sufficiency of the petition, holding that the role of the chief judge in such a situation is at least quasi-judicial:

"Before the chief judge acts upon an application for condemnation filed pursuant to § 472.3, The Code, by selecting a compensation commission pursuant to § 472.4, he must initially make a judicial (or at least quasi-judicial) determination that the application is legally sufficient and the applicant is empowered to condemn."

*Johann, supra,* at 24.

We incline to the view we did not hold in *Johann* that the sole means by which to challenge the actions of a chief judge under chapter 472, The Code, is by certiorari. In *Johann* we said the issue was "whether a certiorari proceeding *may* be maintained in this court . . . ." (Emphasis supplied.) *Johann* addressed the question as to whether certiorari was a permissible means to challenge eminent domain proceedings in which judicial or quasi-judicial action is involved.

If we had said in *Johann* that the appointment of condemnation commissioners was an activity solely judicial in nature, then *Johann* might be interpreted as holding that certiorari in such a case is the sole remedy. See rule 306, R.C.P. We said in *Johann,* at p. 23:

"It is true that condemnation in England's common law was administrative in nature. 1 Nichols, Law of Eminent Domain § 4.101(1) (Rev. 3rd ed. 1964) . . . In the United States, such proceedings are generally either judicial or administrative in character. (citations.) The Iowa statute as presently drafted, involving as it does the activity of a district court judge, appears to be a hybrid of the two."

Further, in *Johann* we said, at p. 24: "Certiorari will lie if the act is of a quasi-judicial character", citing *Massey v. City Council of City of Des Moines,* 239 Iowa 527, 31 N.W.2d 875. *Johann* emphasizes the point

that condemnation in Iowa is both administrative and judicial in nature. Therefore, it would appear that remedies appropriate to both judicial and administrative action would be proper means to challenge such activity. Both certiorari and appeal to the district court should be available under the current condemnation procedure.

The above conclusion is fully re-enforced by the nature of the judicial activity under scrutiny here. The authority of the assistant chief judge to appoint members of the condemnation commission is challenged. While this does involve an implicit determination of authorization on the part of the judge, the act of making the appointment does not involve the quantum of judicial activity present in *Johann*. In *Johann* the judge was required to make an initial decision that the application was legally sufficient. Here we have moved beyond such determination to the appointment of the commission, an act involving selection of commissioners from a pre-existing pool. Section 472.4, The Code. The act of appointment itself involves little that can be termed judicial, other than the fact that it must be done by a judge. Once it is determined that an application is properly before the court, it is plausible to assume that the role of the judge becomes administrative and that mandamus might lie to force the appointment of the commission. Given the at least quasi-administrative role of the judge, it would seem that certiorari should not be the sole means by which to challenge such action, appeal to the district court being an alternative.

We must conclude the trial court erred in overruling plaintiff's motion for summary judgment on the grounds set out in its ruling. However, we conclude the error was nonprejudicial to the plaintiff due to the independent legal grounds which support the result reached by the trial court, if not the rationale employed in reaching the same.

■ Mrs. Koss' challenge to the authority of Judge Chapman to act in the capacity of chief judge under chapter 472, The Code, is due to the fact that Judge Chapman was not reappointed assistant chief judge upon Judge Vietor's reappointment as chief judge. Judge Vietor's term as chief judge expired and he was reappointed, but he did not formally reappoint Judge Chapman assistant chief judge. The plaintiff contends that without the reappointment the acts of Judge Chapman as assistant chief judge upon the termination of the period for which he was properly appointed, are null and void. She therefore asks that the valuation proceedings in which Judge Chapman participated by acting for the chief judge be set aside.

This argument of the plaintiff might be meritorious were it true that the actions of a de facto judge could be distinguished from those of a de jure judge as to the general public. A de facto judge has been defined as "one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good faith belief in his right to exercise such authority, invoked and acquiesced in by the parties, the bar, court officials and the public, . . . ." *Martin v. Dowling,* 204 Tenn. 34, 315 S.W.2d 397, 399. There is no challenge in the matter before us to the validity of the office of assistant chief judge, such appointment being authorized by rule 377, R.C.P., and certainly no question is raised as to the good faith of Judge Chapman in exercising the authority of such office. His involvement in the case was acquiesced in by all parties and their counsel, this dispute having not been raised until two years after the initial condemnation proceeding was instituted.

More precisely on point, it has been held that a judge who comes into office legally and in good faith remains in office and continues to exercise its functions and duties after the expiration of his term is a de facto judge. *Feck v. Commonwealth,* 264 Ky. 556, 95 S.W.2d 25; *Youmans v. Hanna,* 35 N.D. 479, 160 N.W. 705, 161 N.W. 797; *Ridout v. State,* 161 Tenn. 248, 30 S.W.2d 255. Further, it has been held that a judge de facto is, for all intents and purposes, a judge de jure to all persons

except the State, *McDowell v. United States,* 159 U.S. 596, 16 S.Ct. 111, 40 L.Ed. 271; *Sykes v. Sanford,* 150 F.2d 205 (5th Cir.), cert. denied 326 U.S. 783, 66 S.Ct. 331, 90 L.Ed. 474. The Supreme Court has also held that generally the title, right or entitlement to office of a de facto judge can be determined only in a quo warranto proceeding or a similar suit instituted by the sovereign, *Ex parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493, and cannot be questioned in a collateral proceeding, *Ex parte Ward,* 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765.

In the light of the foregoing, we conclude that although Judge Chapman's term as assistant chief judge may have technically expired, his good faith continuation under color of right with the acquiescence of the parties, the bar and the public, made him a de facto assistant chief judge whose exercise of authority may be challenged only by the State. The reasons supporting this de facto doctrine have been set forth in 46 Am.Jur.2d, Judges, § 241, p. 261:

" . . . by making the acts of a de facto judicial officer valid against litigants and making his authority subject to challenge only by the State, (the de facto doctrine) is designed to obviate the possibility of a petitioner's asking a court to overturn a judgment against him on a technicality, and has been said to be necessary as a matter of policy to prevent the overturning of judgments on the ground of error, however minor, in title to office of the judge who rendered it."

Such an analysis appears to us to be in accord with the facts of this case. No prejudice to the substantive rights of the plaintiff is claimed; only a technical flaw in the procedure followed. We, therefore, hold that although the lack of a timely reappointment by the chief judge may have precluded Judge Chapman from being considered a de jure assistant chief judge, he was certainly a de facto assistant chief judge whose authority cannot be challenged in this action by the plaintiff.

Analogous support for the foregoing conclusions is found in the pronouncements of other courts to the effect an appointed judge may validly continue in office until his successor is appointed. *State v. Clark,* 87 Conn. 537, 89 A. 172, Cf. *Application of Rosenblum,* 130 N.J.L. 344, 32 A.2d 837.

We have called for strict compliance with the requirements of chapter 472, The Code, in eminent domain proceedings, *Bourjaily, supra.* We do not deem our conclusions in this case to be inconsistent with the strict compliance standard, for what is really at issue here is the authority of the assistant chief judge rather than noncompliance with a substantial provision of chapter 472. We would still require strict compliance with the provisions of chapter 472 in any situation where prejudice might be concerned or involved.

■ III. With regard to the third issue stated for review (the adequacy of the description of the property), there appears to be substantial questions of fact as to when the initial mistake in the description was corrected, and whether it was consented to by plaintiff's counsel. We are convinced that such determinations are of import to the resolution of the issue, and agree with the trial court that the motion for summary judgment had to be overruled. We conclude the trial court did not err in this respect.

We find no error and affirm the trial court.

AFFIRMED.