**Curtis GLAWE, Lorri Glawe, and Floyd Glawe, Plaintiffs–Appellants,**

v.

**Weldon OHLENDORF, Sr., Stanley Nervig, Bonnie Lewis, John Patterson, Calvin Huseman, and Bruce Schmadeke, Acting in their Official Capacity as Cherokee County Compensation Commissioners, Defendants–Appellees.**

No. 94–1288.

Court of Appeals of Iowa.

Feb. 28, 1996.

John C. Werden, Van Dyke & Werden, P.C., Carroll, for appellants.

John A. Wibe, County Attorney, Cherokee, for appellees.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Justice.

On August 31, 1993, Cherokee County presented a condemnation petition regarding land owned by plaintiffs Curtis Glawe, Lorri Glawe, and Floyd Glawe to the chief judge of the third judicial district, Richard Vipond. The judge appointed defendants in this case to serve as members of the Cherokee County compensation commission.

Under Iowa Code section 6B.4 (1993), the board of supervisors of a county are to ap-

point not less than twenty-eight residents of the county, whose names are to be placed on a list, and they are then eligible to serve as members of a compensation commission. The statute further provides that of these initial twenty-eight persons, one-fourth shall be licensed real estate salespersons or real estate brokers. In addition, insofar as it is applicable to these proceedings, this statute provides:

> The chief judge of the judicial district shall select by lot six persons from the list, two persons who are owner-operators of agricultural property when the property to be condemned is agricultural property; ... and two persons from each of the remaining two representative groups [two licensed real estate salespersons or real estate brokers and two persons having knowledge of property values, such as bankers], who shall constitute a compensation commission to assess the damages.

The property in question here is agricultural property. Calvin Huseman and John Patterson were appointed in the farmer category. Bonnie Lewis and Stanley Nervig were appointed in the real estate category. Weldon Ohlendorf and Bruce Schmadeke were appointed in the banker category. Lewis was named chairperson of the commission.

The commission gave notice of its appraisement of damages on October 6, 1993. Plaintiffs were not satisfied with the damage amounts and filed a petition for writ of certiorari, claiming the commission exceeded its jurisdiction.

While conducting discovery, plaintiffs learned Lewis was not a licensed real estate salesperson or real estate broker at the time she was appointed to the commission. Lewis's real estate license lapsed in 1988. She stated she was unaware at the time she was appointed that her license had lapsed. Plaintiffs amended their petition to allege the action of the commission was illegal because there were not two licensed real estate salespersons or real estate brokers on the commission as required by section 6B.4.

In denying plaintiffs' claim, the district court noted Lewis had been a licensed real estate salesperson prior to the time her li-censed expired and the chief judge did not know Lewis's license had lapsed at the time he appointed her to the commission. In addition, the court noted Lewis was not challenged as to her qualifications at the time the commission met. The court found, among other reasons, that Lewis acted as a de facto commissioner. The writ of certiorari was quashed and annulled, and the petition for writ of certiorari was dismissed. From this adverse ruling, plaintiffs appealed.

Plaintiffs contend the compensation commission was not in compliance with section 6B.4 and, therefore, its actions were illegal. Plaintiffs believe the statute should be strictly applied. They claim the district court should have granted their petition for writ of certiorari.

## I.

Our review of a district court's action on a petition for writ of certiorari is for correction of errors at law. *State v. Iowa Dist. Court,* 503 N.W.2d 411, 412 (Iowa 1993). We are bound by the findings of the district court if they are supported by substantial evidence in the record, but are not bound by erroneous legal rulings that materially affect the court's decision. *Chrischilles v. Arnolds Park Zoning Bd. of Adjustment,* 505 N.W.2d 491, 493 (Iowa 1993).

Certiorari is available in condemnation cases involving jurisdictional questions, substantial departures from statutory requirements, and other illegalities by a lower tribunal, board, or commission. *Aplin v. Clinton County,* 256 Iowa 1059, 1062, 129 N.W.2d 726, 728 (1964). A writ of certiorari shall only be granted where an inferior tribunal, board, or officer, exercising judicial functions, is alleged to have exceeded its proper jurisdiction or otherwise acted illegally. *Frank Hardie Advertising, Inc. v. City of Dubuque Zoning Bd. of Adjustment,* 501 N.W.2d 521, 523 (Iowa 1993). When a court order annulling a writ of certiorari is appealed from, the burden of showing illegality rests upon the party making that assertion. *Thompson v. City of Osage,* 421 N.W.2d 529, 531 (Iowa 1988).

## II.

■ For the reasons that follow, we concur with that part of the district court's ruling which determined Lewis was a de facto commissioner (officer). The term "de facto officer" has been recognized as a viable doctrine in Iowa for a number of years. Iowa holds to the view that before one can claim to be an officer, there must be a law creating the office. The office itself must be one de jure; the officer may then be one de facto. *Town of Decorah v. Bullis*, 25 Iowa 12, 18 (1868). Ordinarily, there must be an existing office or an office de jure before there can be an officer de facto. 67 C.J.S. *Officers* § 266, at 802 (1978).

Our supreme court, as far back as 1863, applied the doctrine in *Keeney v. Leas*, 14 Iowa 464, 469 (1863), when it held a public officer duly appointed or elected, but who has in some particular failed to qualify in the manner prescribed by law, acts de facto and his acts as to third persons are entitled to credit. See also *Koss v. City of Cedar Rapids*, 271 N.W.2d 730, 736 (Iowa 1978), where the objections were lodged to the actions of an assistant chief judge whose term had technically expired. The supreme court held his good faith continuation as an assistant chief judge under color of right with the acquiescence of the parties, the bar, and the public, made him a de facto assistant chief judge. *Id.* at 737. His act was declared valid. *Id.*

■ It is generally held that persons having color of title may be regarded as de facto officers, "even though legally they are not eligible for the position or do not possess the statutory qualifications for the office." 67 C.J.S. *Officers* § 269, at 806 (1978). We believe the following statement from *State v. Miller*, 222 Kan. 405, 565 P.2d 228 (1977), is instructive insofar as the characteristics of a de facto officer are concerned:

A person who assumes and performs the duties of a public office under color of authority and is recognized and accepted as the rightful holder of the office by all who deal with him is a *de facto* officer, even though there may be defects in the manner of his appointment, or he was not eligible for the office, or he failed to conform to some condition precedent to assuming the office.

*Miller*, 565 P.2d at 235.

With those principals in mind, we conclude Bonnie Lewis meets all of the essential elements of a de facto status. It is clear there was an office de jure to be filled and her appointment to that office was made by a proper authority. Upon her appointment, she took possession and exercised the duties of that existing office. She was not a usurper nor was she an intruder,[1] for Lewis had the color of right and authority to the office and acted in accordance with that authority.

There are other reasons why she qualifies as an officer de facto. At the time the commission met, Lewis was recognized as a person possessed with the necessary qualifications to act as a commissioner. In this respect, the appointing authority proceeded under the assumption she was a licensed broker and she accepted the appointment with the thought that she was eligible. Further, although the opportunity was present to challenge the commission collectively or the commissioners individually, it was not done.

Equally as important as all of the above factors, there is no hint or assertion of fraud, deception, or untruthfulness. It is not disputed that she worked as a real estate agent until 1989. The evidence further shows she believed her license was "in storage" and she yet qualified as a licensed broker should she elect to renew her license. Her background as a licensed broker presented her with an acute knowledge of real estate in her area. Under the circumstances, we conclude that her presence on the compensation commission did not inhibit the commission from fulfilling its main purpose, that is, to assess property owners' damages and file a written report. *Aladdin, Inc. v. Black Hawk County*, 522 N.W.2d 604, 606 (Iowa 1994). We find no error in the district court's decision to quash and annul the writ of certiorari.

---

1. A usurper or intruder has been defined as a person who takes possession of an office and undertakes to act officially without any authority, either actual or apparent. 63 Am.Jur.2d *Public Officers and Employees* § 581, at 1082 (1984).

■ As an aside, and as appellants have correctly stated, our supreme court has called for strict compliance with the requirements of eminent domain proceedings. *Bourjaily v. Johnson County*, 167 N.W.2d 630, 633 (Iowa 1969). In addition, appellants have wisely and correctly directed to our attention that when we are called upon to determine whether strict compliance with a statute is required or whether substantial compliance is adequate, we must consider whether the duty imposed by the statute is mandatory or directory. *Willett v. Cerro Gordo County Zoning Bd. of Adjustment*, 490 N.W.2d 556, 559 (Iowa 1992). It follows that when the duty imposed by the provision is essential to effect the main purpose of the statute, the provision is mandatory and failure to perform the duty will invalidate subsequent proceedings. *Id.* On the other hand, when the duty imposed is not essential to the main statutory objective, the provision is directory and failure to perform the duty will not affect the validity of subsequent proceedings unless prejudice is shown. *Id.* at 560. Although we have affirmed the trial court, we feel compelled to emphasize we have not done so on the strength of the argument that the duty imposed by the statute is directory. Because of the result reached, we need not address that issue.

Like in *Koss*, we do not deem our conclusions in this case to be inconsistent with the strict compliance standard mentioned above. Although it may be argued *Koss* is not directly on point, the similarity is sufficient for us to conclude, as was the case in *Koss*, that the real issue here is the authority of Lewis to act. It is still a requirement of strict compliance with the eminent domain statutes in any situation, de facto or otherwise, where prejudice might be concerned or involved.

We affirm the decision of the district court. Costs of this appeal are assessed to plaintiffs.

**AFFIRMED.**

HAYDEN, P.J., concurs.

SACKETT, J., dissents.

SACKETT, Justice (dissenting).

I dissent.

The statutory directions for compensation commissions were not followed in this condemnation action. Bonnie Lewis was appointed a condemnation commissioner in the real estate category. She was not either in the class of licensed salespersons or broker. She had a license in 1988. The county sought to condemn the land in question in 1993, some five years from the date of her last license. Lewis was not current enough with real estate law to know her license had lapsed at the time of her appointment. The majority accepts her ignorance of the fact her license had lapsed as a reason to find she was an officer de facto. I find it one of several reasons why she did not meet the statutory qualifications of a commissioner.

The majority finds Lewis's background as a licensed broker presented her with an acute knowledge of real estate in the area. A five-year lapse in sales experience can result in ignorance of current market values. This is particularly unfair to one whose land is sought to be condemned because generally land values increase with inflation and the passage of time. Plaintiff was prejudiced by Lewis's holding as being currently licensed and possessed of the qualifications of one currently licensed to sell real estate.

In *Bourjaily v. Johnson County*, 167 N.W.2d 630, 633–34 (Iowa 1969), the court said:

"We are firmly committed to the rule that statutes delegating the powers of eminent domain are strictly construed and restricted to their expression and intention. *Iowa State Highway Comm'n v. Hipp*, 259 Iowa 1082, 1088, 147 N.W.2d 195, 198; *Aplin v. Clinton County*, 256 Iowa 1059, 1061, 129 N.W.2d 726, 727, and citations.

In 1 Nichols on Eminent Domain, section 3.213(3), pages 359–62, the author states: 'Strict construction as to exercise of the power. In acting pursuant to a conceded power of eminent domain, the grantee's procedure is strictly construed in the light of the authorizing statute. As private property can be taken for public uses against the consent of the owner only in such cases and by such proceedings as may be specially provided by law, and as

these proceedings are not according to the common law and are in derogation of private right, and as they wholly depend on statutory regulation, the use of this extraordinary power must comply with all provisions of the statute. This does not necessarily mean that literal observance of the statutory regulations is required. Substantial conformity to the requirements of the statute is sufficient.

The legislature has the undoubted power to determine how the grantee shall exercise the delegated power. In order to exercise such power properly the grantee must conform to such provisions, and for the purpose of determining whether or not such conformity exists its action is subject to judicial review.'

In 27 Am.Jur.2d, *Eminent Domain,* section 375, pages 240–41, we find this: 'Thus, where the right of eminent domain is invoked, the provisions of the law granting the right must be complied with. In some instances the statute or franchise authorizing the construction of the work prescribes a special procedure to facilitate acquiring property by condemnation; where such is not the case, condemnors are bound, of course, to proceed according to the provisions of the general laws. In any case, the extent to which the power of eminent domain may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. Where, therefore, the state, a municipality, or other agent in charge of a public use, seeks to acquire, against the consent of the owner, private property for public use, the provisions of the authorizing law must be strictly complied with, and this must appear on the face of the proceedings for taking the land. In other words, the statutory procedure must be followed.' For like statements, see 29A C.J.S. *Eminent Domain,* § 22."

*Bourjaily,* 167 N.W.2d at 630–34.

While recognizing the supreme court's call for strict compliance with the statutory requirements in eminent domain proceedings, the majority has not followed its instruction. The extraordinary nature of this proceeding demands strict compliance. There was not strict compliance here. I would grant plaintiff's claim for relief.