[No. B046338. Second Dist., Div. Five. Mar. 10, 1992.]

REDEVELOPMENT AGENCY OF THE CITY OF POMONA, Plaintiff and Respondent, v.
THRIFTY OIL COMPANY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I, part IV, subsections A, D, and E, and part V.

COUNSEL

Fadem & Douglas and Eugenia R. Hicks for Defendant and Appellant.

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Patrick A. Hennessey and Lori K. Davies for Plaintiff and Respondent.

OPINION

ASHBY, J.—Plaintiff and respondent the Redevelopment Agency of the City of Pomona (City) exercised its eminent domain powers to obtain a parcel of property owned by defendant and appellant Thrifty Oil Company (Thrifty). The Pomona, California property had been used as a gasoline station. The station was 23 years old, with some renovation in recent years. It was a self-service station with "no frills." The soil on the land was contaminated due to gasoline spillage. Gasoline sales constantly declined during the years prior to the station being taken by City. Thrifty's financial documents indicated the station was losing money.[1] The only issues to be determined by the jury were the value of the parcel of property and the value of the business goodwill.

Prior to trial City took possession of the property and spent $182,000 to treat the contamination in a remediation procedure. Thrifty's expert opined that the real property was worth $950,000 ($1 million less $50,000 for the cost of remediation). City's expert opined that the property was worth $5,000, after deducting the cost of remediation. The expert appointed by the court opined that the fair market value of the property was $125,000, after deducting a reasonable cost for remediation. The jury determined the fair market value of the real property was $136,200.

On the issue of goodwill, Thrifty's expert suggested the value of lost goodwill was $125,000. City suggested the expert's opinion was not reasonably based and that no goodwill was lost. City did not present expert testimony on this issue. The jury determined lost goodwill was $67,500.

Thrifty's appeal raises a broad spectrum of issues, none of which show reversal is warranted. When relevant, additional facts are delineated below.

In the unpublished portions of this opinion (pts. I, IVA, IVD, IVE and V), we discuss the admission of an augmented appraisal report, specific

---

[1]Thrifty suggested the decrease in gallonage and profits was due to the competition created by ARCO when ARCO introduced a sales strategy based upon low prices. Thrifty contended the effects of ARCO's policy were diminishing and thus sales could be expected to increase.

instructions, and the accusation of judicial misconduct. In the published portions of this opinion (pts. II, III, IVB, IVC and VI), we deal with issues relating to property fair market value, goodwill value, instructions regarding remediation, instructions regarding goodwill, and the disposition.

## I

AUGMENTED APPRAISAL REPORT*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II

PROPERTY FAIR MARKET VALUE

 Contrary to Thrifty's suggestion, the fair market value of the property was shown by substantial evidence.

Thrifty's expert utilized the income capitalization approach to reach his conclusion that the real property was worth $950,000 ($1 million less $50,000 for remediation cost). This conclusion was based upon comparable leases.[7] City's expert determined the best approach to value the property was the market data/sales approach; he concluded the property was worth $5,000. This sum was ascertained after the expert explained that the property was worth $165,000, but that after deducting the cost of remediation (approximately $182,000) the property would have only minimal value. He also rejected the income capitalization approach stating the circumstances did not warrant its use. The court-appointed appraiser also rejected the income capitalization approach used by Thrifty's expert and concluded the property was worth $125,000. This opinion was reached after valuing the property and then deducting approximately $100,000 for remediation.[8] 
 The experts disagreed as to the significance of many factors, such as the declining sales of gasoline, the financial information which indicated the station was losing money, the poor location of the station, traffic counts, the

---

*See footnote, *ante*, page 469.

[7]The Lease to Circle K was one contract which packaged the stations located throughout the Southland. Nonoperating stations, regardless of location, were leased at $5,000. Operating stations were leased at $7,000 per month and sites which also contained minimarkets leased at $9,000 per month. The parties disagreed as to whether other factors, such as gallonage, location, age, costs to Thrifty for remediation, and promises as to the cost of gasoline factored into the contract.

[8]The court-appointed appraiser deducted a sum less than that actually spent by City for remediation. The sum he deducted was determined by other experts who claimed the contamination cleanup could have been accomplished in a different manner and at a lower price.

station's self-service facilities, contamination, the surrounding environment and the costs for getting rid of the contamination, i.e., the remediation costs.[9] However, all of these factors were presented to the jury for its consideration. This evidence, amply supports the jury's conclusion that the fair market value of the property was $136,200.

III

GOODWILL VALUE

■ In eminent domain actions, neither party has the burden of proof with regard to compensation. (Code Civ. Proc., § 1260.210, subd. (b).) Thus, both the landowner and the condemning entity offer evidence as to property valuation. The jury's award for the value of the real property must be "within the range of expert testimony if such testimony is the only substantial evidence in the case." (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 889 [92 Cal.Rptr. 162, 479 P.2d 362]; see *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal.Rptr. 245]; *People* ex rel. *D. of P. Wks.* v. *McCullough* (1950) 100 Cal.App.2d 101, 105 [223 P.2d 37]; *Aetna Life & Casualty Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 865, 877 [216 Cal.Rptr. 831].)

Prior to the enactment of Code of Civil Procedure section 1263.510, property owners were not reimbursed for lost goodwill when a governmental entity acquired property through an eminent domain action. (*People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340]; *Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 817 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].)[10] Presently, in order for the landowner to be awarded compensation for goodwill, section 1263.510 requires the landowner prove that the goodwill loss was caused by the taking, that the loss could not be prevented by

[9]After examining the record and digesting the expert's discussions as to the different methods of remediation and the respective costs of each, we cannot agree with Thrifty's suggestion that City engaged in "wasteful cleanup." Nor are we persuaded by the contention that the remediation issue was not properly before the jury. The contamination of the property was used by all experts in determining the fair market value of the property. Extensive cross-examination was conducted as to the proper remediation procedure and the costs of different types of remediation. Inherent in this discussion was the reasonableness of the procedures taken by City. As a characteristic of the property which would affect its value, the remediation issue was properly before the trier of fact. (*San Diego Gas & Electric Co.* v. *Daley* (1988) 205 Cal.App.3d 1334, 1346 [253 Cal.Rptr. 144]; *County of Los Angeles* v. *Bean* (1959) 176 Cal.App.2d 521, 527 [1 Cal.Rptr. 464].)

[10]Goodwill "consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." (Code. Civ. Proc., § 1263.510, subd. (b).)

relocation, that the loss will not include relocation expenses, and that the loss will not be duplicated by compensation otherwise awarded to the owner.[11] ■ Thus, with regard to the *entitlement* of goodwill, the landowner has the burden of proof. (Code Civ. Proc., § 1263.510; *Redevelopment Agency* v. *Metropolitan Theatres Corp.* (1989) 215 Cal.App.3d 808, 811 [263 Cal.Rptr. 637]; *People* ex rel. *Dept of Transportation* v. *Salami* (1991) 2 Cal.App.4th 37, 44 [2 Cal.Rptr.2d 833].) After entitlement to goodwill is shown (which includes a showing that compensation for the loss will not be duplicated) neither party has the burden of proof with regard to *valuation*. (*Redevelopment Agency* v. *Metropolitan Theatres Corp.*, *supra*, 215 Cal.App.3d at p. 812; *People* ex rel. *Dept. of Transportation* v. *Salami*, *supra*, 2 Cal.App.4th at p. 45.)

Thrifty's expert valued the lost goodwill at $125,000. Prior to trial, City's expert opined that the value of lost goodwill was $80,000. City's expert's valuation was without regard to soil contamination and it assumed Thrifty had met its burden in proving that such goodwill existed pursuant to Code of Civil Procedure section 1263.510. Thrifty was aware of the opinion by City's expert.[12] At trial, the opinion of Thrifty's expert was admitted into evidence. City, however, took the position that no goodwill was shown and thus did not submit an expert opinion on the value of goodwill. City's goodwill appraisal of $80,000, therefore, was unknown to the jury. The jury awarded $67,500 for the value of goodwill.

We do not find persuasive Thrifty's contention that the issue of goodwill must be redetermined.

In presenting its case, City pointed to the fact that the gallonage was constantly decreasing, that the property was at a secondary location (one not

---

[11]Code of Civil Procedure section 1263.510 states in part:

"(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill *if the owner proves all of the following*:

"(1) The loss is caused by the taking of the property or the injury to the remainder.

"(2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill.

"(3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code.

"(4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner." (Italics added.)

Government Code section 7262 allows parties to recover for expenses in relocating after being displaced.

[12]Although City's goodwill appraisal report was not placed into evidence, it was marked for identification and is contained in the record on appeal. Neither party denies that City's appraisal report on goodwill existed or that both parties were aware of its existence prior to trial.

located near a freeway), that the station was in a dilapidated area of Pomona, and that the station was losing money. Additionally, there was potential that in proving goodwill value, Thrifty would duplicate the award given for the real property. Thrifty's expert, who appraised the value of the land, utilized monthly rental value (purportedly to be $7,000 per month) to reach a conclusion. Monthly rental value was also utilized by Thrifty's other expert in valuing goodwill compensation.[13] Based upon these facts, City suggested Thrifty had not met its burden to prove goodwill existed.

On appeal, Thrifty contends the jury only had before it the valuation of its expert and thus was limited to that value.[14] However, this contention neglects the concept that the jury is limited in eminent domain cases to the evidence of experts which is competent and substantial. The jury is not precluded from evaluating the credibility of witnesses. (*Marshall* v. *Department of Water & Power* (1990) 219 Cal.App.3d 1124, 1147 [268 Cal.Rptr. 559].) By arguing that no goodwill existed and by not presenting any evidence as to its value, City attacked Thrifty's valuation arguing the existence of goodwill had not been proven by competent evidence. Thus City suggested Thrifty had not met its burden of proof on the issue of entitlement of goodwill. Additionally, by proceeding in this manner, City was also establishing as a floor the sum of $0 as the value of goodwill. (*Ibid.* [entity's failure to present evidence on value sets floor at $0].)

If a governmental entity reasonably believes that there is no goodwill and the landowner has not met the burden to prove entitlement, the governmental entity can argue this position to the jury. It need not, as would be concluded from Thrifty's suggestion, put into evidence expert valuation evidence which it finds to be unsupported.

Here, prior to trial City's expert opined that lost goodwill was worth $80,000. However, in reaching this conclusion the expert assumed that entitlement to goodwill had been shown and that remediation had no effect on the value. At trial, however, cross-examination of Thrifty's expert and

---

[13] The expert who testified as to the value of goodwill utilized three different valuation approaches before reaching his conclusion. In discussing the capitalization of income approach he noted that this approach focused on monthly income streams, which would include costs to the business owner such as rent.

[14] To support this contention, Thrifty cites *People* ex rel. *D. of P. Wks.* v. *McCullough, supra,* 100 Cal.App.2d 101, *Redevelopment Agency* v. *Modell, supra* 177 Cal.App.2d 321 and *Aetna Life & Casualty Co.* v. *City of Los Angeles, supra,* 170 Cal.App.3d 865.

other evidence (such as the location of the property and its financial condition) could have supported a finding that no goodwill existed.[15] City therefore reasonably argued there was no competent evidence to support Thrifty's claim for lost goodwill. City did not conceal any information in presenting its case. Rather, City reasonably examined the evidence and concluded no goodwill existed; City had the prerogative of presenting its case in this fashion.[16] Although the jury did not totally accept City's position, the evidence would have supported a finding that no goodwill was proven. (*People* ex rel. *Dept. Pub. Works* v. *Bond* (1964) 231 Cal.App.2d 435 [41 Cal.Rptr. 900, 13 A.L.R.3d 1142] [verdict less than experts' opinions supported by the evidence]; *Sacramento etc. Drainage Dist.* v. *W.P. Roduner Cattle etc. Co.* (1968) 268 Cal.App.2d 199 [73 Cal.Rptr. 733] [jury entitled to reject both experts and use other competent evidence to support verdict].)

IV

INSTRUCTIONS

A. *BAJI No. 11.71*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Instructions Regarding Remediation*

Thrifty requested the court instruct with two special instructions which stated that the jury should consider if City notified Thrifty before doing the remediation, that the jury should consider the reasonable cost of the remediation, and that City had the burden of proving reasonableness of the remediation by a preponderance of evidence.[18] To support its contention that failure to give these instructions constitutes error Thrifty cites cases (*Carpenter Paper Co.* v. *Kellogg* (1952) 114 Cal.App.2d 640 [251 P.2d 40];

---

[15] Additionally we note that since the experts called by Thrifty duplicated the use of rental value in computing the fair market value of the property and the goodwill value, a logical argument can be made that the awards were duplicated. (Code Civ. Proc., § 1263.510, subd. (a)(4).)

[16] Thrifty's citation to *City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860 [135 Cal.Rptr. 647, 558 P.2d 545] to suggest City's attorney committed misconduct does not alter our conclusion. In *Decker* the governmental agency knew property was needed for airport parking and the condemned property was suitable for this purpose. However, this information was concealed from the landowner and the jury and the governmental attorney argued there was no such need. *Decker* concluded that concealing the information constituted misconduct by the governmental attorney. Here, no concealment occurred.

\*See footnote, *ante*, page 469.

[18] Special Instruction No. 38 requested by Thrifty read as follows: "In determining the remediation cost, if any, which the Redevelopment Agency is entitled to offset from the

*Ragghianti* v. *Sherwin* (1961) 196 Cal.App.2d 345 [16 Cal.Rptr. 583]) which are not persuasive because they deal with indemnity and sureties. As discussed above (see fn. No. 9), remediation was properly considered by the jury in valuing the fair market value of the property.

## C. *Goodwill*

The jury was instructed with versions of certain instructions requested by Thrifty which were modified slightly by the court. These instructions informed the jury that it was not bound to accept the opinion of any witness on the issue of compensation and that it had to determine the compensation to be paid for the property acquired and the goodwill loss, "if any, . . ."[19] Thrifty suggests that the court's added words "if any" were prejudicial because "(1) there was no question that Thrifty had lost goodwill; and (2) Thrifty was entitled to be compensated for its loss of goodwill." However, as discussed above (see pt. III), the evidence on the entitlement to goodwill was not conclusive, thus there was a question as to whether an award was appropriate.

Additionally, the jury was instructed with BAJI No. 11.98, "Except on the issue of loss of goodwill, neither the plaintiff nor the defendant has the burden of proof on the issue of compensation." A modified version of BAJI No. 11.91 was also utilized. This instruction defined goodwill, stated that the owner had to prove the four elements required pursuant to Code of Civil Procedure section 1263.510 (see fn. 11) and defined what was required by a preponderance of the evidence.[20] The court refused to give two other instructions proffered by Thrifty: (No. 24) "A loss of goodwill caused by the taking

market value, you shall take into account: [¶] whether the Agency gave Thrifty timely notice and an opportunity to do the remediation; and [¶] the reasonable cost of the remediation."

Special Instruction No. 39 stated: "The Redevelopment Agency has the burden to prove liability for and the reasonableness of its remediation cost by a preponderance of the evidence. [¶] 'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. [¶] 'You should consider all of the evidence bearing upon every issue regardless of who produced it.' "

[19]The second paragraph of Thrifty's requested Instruction No. 16 as modified, read: "You are not bound to accept the opinion of any such witness but you are to determine the compensation to be paid for the property acquired and the goodwill loss, *if any*, for yourselves, from all the evidence, judging such evidence in the light of your own knowledge and experience." (Italics added.)

No. 27 as modified read: "You shall determine separately each of the following: (a) The compensation for the property being taken. (b) The compensation for loss of goodwill, *if any*." (Italics added.)

[20]As given to the jury, the "loss of goodwill" instruction (BAJI No. 11.91 as modified) read as follows: "The owner of a business conducted on property being taken is entitled to recover

of a business location is compensable"; and (No. 28) "Neither the plaintiff nor the defendant has a burden of proof on the amount of compensation for loss of goodwill." Citing two recent cases, *Redevelopment Agency* v. *Metropolitan Theatres Corp.*, *supra*, 215 Cal.App.3d 808 and *People* ex rel. *Dept. of Transportation* v. *Salami*, *supra*, 2 Cal.App.4th 37, Thrifty argues this was reversible error.

As discussed above (see pt. III), *Metropolitan Theatres* and *Salami* hold that the landowner has the burden of proof on the issue of *entitlement* to an award for the loss of goodwill, but not on the issue of *compensation* for loss of goodwill. In *Metropolitan Theatres*, the parties stipulated that the landowner had met its burden to prove entitlement of goodwill by meeting the requirements of Code of Civil Procedure section 1263.510, i.e., that the condemnation caused the loss of goodwill, that the loss could not be prevented by relocation, that relocation expenses were not involved, and there was no duplication in other compensation. (See fn. 11.) The *Metropolitan Theatres* court refused to instruct the jury that the landowner had the burden of establishing the *amount* of goodwill but merely instructed the jury that neither party "has the burden of proof on the issue of compensation." (215 Cal.App.3d at p. 810.) *Metropolitan Theatres* did not discuss at length the evidence. However, since there was a stipulation on the issue of entitlement, the court concluded there was no instructional error and that had there been error it would have been harmless. (*Id.* at p. 812.) In *Salami* the parties also stipulated that the landowner had met his burden to establish the entitlement of compensation pursuant to Code of Civil Procedure section 1263.510. The only evidence on the value of the loss of goodwill was presented by the landowner, who valued it at $277,300. In addition to other instructions, the *Salami* jury was instructed with BAJI No. 11.98, "[e]xcept on the issue of loss of good will, neither the plaintiff nor the defendant has the burden of proof on the issue of competition [*sic* (compensation).]" The jury was also instructed that the landowner had the burden to prove that

compensation for the loss, if any, of business goodwill. [¶] The term goodwill as used in this instruction means the benefits that attach to a business as a result of its location, its reputation for dependability, skill, or quality and any other circumstances resulting in probable retention of old patronage or acquisition of new patronage. [¶] In order to establish a loss of goodwill, the burden of proof is on the owner to prove each of the following by a preponderance of the evidence: [¶] One, that goodwill exists; [¶] Two, that the loss of goodwill will be caused by the taking of the property being taken; [¶] Three, that the loss [cannot] reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill; [¶] Four, that the compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner. [¶] By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. [¶] If the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the owner."

goodwill existed. In that the jury awarded zero for the loss of goodwill and the parties had stipulated that entitlement was not in issue, the *Salami* court concluded that the instructions erroneously placed the burden of proof on the landowner on the issue of the amount of compensation and reversal was warranted. (2 Cal.App.4th at p. 46.)

Here, any problems generated by instructions which were not precise and which switched the burden of proof on the issue of *entitlement* were not prejudicial. By awarding Thrifty $67,500 for goodwill the jury determined Thrifty had proven it was entitled to goodwill and flatly rejected City's claim that no loss was shown. Although the award indicates the jury did not totally agree with Thrifty's valuation of the loss, the instructions did not prevent the jury from properly considering all of the evidence. Thus, the jury would not have awarded a different amount of compensation had the instructions been more precisely stated. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

D., E.*

. . . . . . . . . . . . . . . . . . . . . . . .

## V

### JUDICIAL MISCONDUCT*

. . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 27, 1992.

---

*See footnote, *ante*, page 469.