ALADDIN, INC., An Iowa Corporation, Appellee,

v.

BLACK HAWK COUNTY, Iowa, Appellant,

and

William Ramsey, Brad Condon, Jim Westemeier, Nancy Showers, Lavern Cutsforth, and Dave Fegley, Defendants,

and

American Trust & Savings Bank, Appellee.

No. 95–2140.

Supreme Court of Iowa.

April 23, 1997.

Rehearing Denied May, 16, 1997.

David J. Dutton and Sydney A. Thomas of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, and Peter W. Burk, Assistant County Attorney, for appellant.

William L. Meardon and Charles A. Meardon of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, for appellee-Aladdin.

Chad C. Leitch of O'Connor & Thomas, P.C., Dubuque, for appellee-American Trust.

ANDREASEN, Justice.

In *Aladdin, Inc. v. Black Hawk County*, 522 N.W.2d 604, 606 (Iowa 1994) [hereinafter *Aladdin I* ], we held certiorari was the proper procedure to review the Black Hawk County Compensation Commission's (Commission) compliance with statutory and constitutional requirements for a valid condemnation. We remanded the certiorari action to the district court for a ruling on whether alleged illegalities occurred so as to invalidate the compensation award. *Id.* at 607. On remand, the district court invalidated the Commission's award because it (1) failed to consider a compensation award for the value of dry cleaning equipment, and (2) illegally reduced the value of the land by the estimated cleanup cost of existing groundwater contamination. On appeal, we affirm.

I. *Background Facts and Proceedings.*

We stated the basic facts in the first appeal:

> Aladdin, Inc., operated a laundry business in Waterloo, Iowa. In 1992, Black Hawk County condemned Aladdin's facilities, pursuant to Iowa Code chapter 472, in preparation for the building of a new county jail. After conducting a hearing at which both sides presented evidence of the property's value, the Black Hawk County Compensation Commission awarded Aladdin damages.

*Aladdin I,* 522 N.W.2d at 604.

Following the award, Aladdin filed a petition for writ of certiorari, alleging several illegal acts by Black Hawk County (County) and the Commission. The district court dismissed part of the writ and later annulled the writ. Following appeal, we remanded the action for a ruling on the record previously made, to determine "whether the illegality alleged by Aladdin occurred so as to invalidate the compensation award." *Id.* at 607.

On remand, the district court addressed the alleged illegalities. The court first con-

cluded that the Commission's allowance for moving and relocation expenses of the dry cleaning equipment, instead of a compensation award for the value of the equipment, was illegal. As a result, it invalidated that portion of the Commission's report. The court also concluded that an eminent domain proceeding is not the proper forum to assess liability for environmental contamination. Therefore, the court invalidated the condemnation award of damages for real estate because the Commission's reduction of real estate value by the cost of remediation was illegal. The County filed timely notice of appeal.

## II. *Scope of Review.*

 Certiorari lies where an inferior tribunal, board, or officer, exercising judicial functions, has exceeded its jurisdiction or has acted illegally. Iowa R.Civ.P. 306. The compensation commission is an inferior tribunal. Illegality exists when the findings of the tribunal do not have substantial evidentiary support or when the tribunal does not apply the proper law. *Amro v. Iowa Dist. Ct.,* 429 N.W.2d 135, 138 (Iowa 1988). This certiorari action presents both legal and constitutional issues. Our review of the legal issues is for correction of errors at law. *Iowa Coal Mining Co. v. Monroe County,* 494 N.W.2d 664, 668 (Iowa 1993). Our review of the evidence bearing on the constitutional claims is de novo. *Id.*

## III. *Just Compensation.*

 The United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Fourteenth Amendment makes this provision binding on the states. *Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 430 (Iowa 1996) (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358, 364 (1980)). The Iowa Constitution similarly provides that "[p]rivate property shall not be taken for public use without just compensation first being made...." Iowa Const. art. I, § 18. In determining what constitutes "just compensation," courts must look to the

individual facts of each case. *CMC Real Estate Corp. v. Iowa Dep't of Transp.,* 475 N.W.2d 166, 170 (Iowa 1991). We have stated:

> The term "just compensation," as found in [the] Constitution and statute, has no technical or purely legal significance. The words express in a general way the meaning intended....
>
> ....
>
> Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. It is difficult, if not impossible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case....

*Des Moines Wet Wash Laundry v. City of Des Moines,* 197 Iowa 1082, 1086–87, 1089, 198 N.W. 486, 488, 489 (1924).

 To determine the amount of compensation, courts generally look to the property owner's loss, not the gain of the entity causing the taking. *CMC Real Estate Corp.,* 475 N.W.2d at 170. The property owner's loss is usually measured by the extent to which the taking deprived it of an interest in its property. *Id.* When the entire property is taken, our general rule is that the measure of damage is the reasonable market value at the time of the condemnation. *Kaperonis v. Iowa State Highway Comm'n,* 251 Iowa 39, 41, 99 N.W.2d 284, 285 (1959). The overriding purpose is to make the property owner, whose property is condemned, whole. *Forst v. Sioux City,* 209 N.W.2d 5, 7 (Iowa 1973).

In giving meaning to the Fifth Amendment requirement of "just compensation," the Supreme Court has sought to put the owner of the condemned property "in as good a position pecuniarily as if his property had not been taken." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236, 1244 (1934). Later, the Court stated:

> However, this principle of indemnity has not been given its full and literal force. Because of serious practical difficulties in assessing the worth an individual places on

particular property at a given time, we have recognized the need for a relatively objective working rule. The Court therefore has employed the concept of fair market value to determine the condemnee's loss. Under this standard, the owner is entitled to receive "what a willing buyer would pay in cash to a willing seller" at the time of the taking.

Although the market-value standard is a useful and generally sufficient tool for ascertaining the compensation required to make the owner whole, the Court has acknowledged that such an award does not necessarily compensate for all values an owner may derive from his property. Thus, we have held that fair market value does not include the special value of property to the owner arising from its adaptability to his particular use.

. . . .

But while the indemnity principle must yield to some extent before the need for a practical general rule, this Court has refused to designate market value as the sole measure of just compensation. For there are situations where this standard is inappropriate. As we held in *United States v. Commodity Trading Corp.,* 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707, 711 (1950):

"When market value has been too difficult to find, or when its application would result in manifest injustice to owner or public, courts have fashioned and applied other standards.... Whatever the circumstances under which such constitutional questions arise, the dominant consideration always remains the same: what compensation is 'just' both to an owner whose property is taken and to the public that must pay the bill?"

Hence we must determine whether application of the fair-market-value standard here would be impracticable or whether an award of market value would diverge so substantially from the indemnity principle as to violate the Fifth Amendment.

The instances in which market value is too difficult to ascertain generally involve property of a type so infrequently traded that we cannot predict whether the prices

previously paid, assuming there have been prior sales, would be repeated in a sale of the condemned property.

*United States v. 564.54 Acres of Land,* 441 U.S. 506, 510–13, 99 S.Ct. 1854, 1857, 1858, 60 L.Ed.2d 435, 440–42 (1979) (citations omitted).

To implement the constitutional requirement of "just compensation," our Iowa statute requires a compensation commission to assess the damages the owner will sustain by reason of the appropriation. Iowa Code § 472.14 (1991) (chapter 472 was transferred to chapter 6B in 1993). The word "damages" means the same as "just compensation." *Henry v. Dubuque & Pac. R.R.,* 2 Iowa (Cole) 288, 300 (1855). We have stated:

The foundation finding for the damage award in condemnation is the value of the property before condemnation. If it can be established that there is a market for the property, by evidence of a general buying and selling of that kind of property, the first finding will be the market value. But if the nature of the property [is] such that no market for that kind of property can be ascertained or established, the primary finding will be intrinsic or actual value of the property. Once the value is found before condemnation, either market or actual as the case may be, the next question is the value after condemnation. If the whole of the property is taken the first finding of value is the measure of recovery.

*Nedrow v. Michigan–Wisconsin Pipe Line Co.,* 245 Iowa 763, 768, 61 N.W.2d 687, 690 (1953).

IV. *Validity of Commission's Award Involving Personal Property.*

■ The County argues that the Commission was correct in awarding $51,065 to Aladdin for moving and relocation expenses and not awarding Aladdin the value of its personal property located on the real estate. Thus, the County argues, the district court erred in invalidating the Commission's award. We disagree.

Whenever property is sought to be condemned, a compensation commission must be appointed to appraise the damages to all

property taken by the condemnor. *See* Iowa Code §§ 472.3(5), 472.4. According to section 472.14:

> The commissioners shall, at the time fixed in the aforesaid notices, view the land sought to be condemned and assess the damages which the owner will sustain by reason of the appropriation; and they shall file their written report with the sheriff.
>
> . . . .
>
> In assessing the damages the owner or tenant will sustain, *the commissioners shall consider and make allowance for personal property which is damaged or destroyed or reduced in value.*

(Emphasis added.)

When the Commission filed its first report, it failed to divide the damages into parts, which is required by section 472.14 if requested by the condemnor or condemnee. *See Aladdin I,* 522 N.W.2d at 606. The Commission later filed a supplemental report to comply with the statute. In this report, the Commission provided an award of $235,415 for immovable fixtures and $51,065 for moving and relocation expenses. No award was made for the value of Aladdin's dry cleaning equipment located at the Waterloo facility.

In its petition for a writ of certiorari, following notification of the award, Aladdin claims the Commission acted illegally in failing to consider and enter an award for damage, destruction, or reduction in value of its personal property, after the County represented it would purchase the personal property and, in fact, had obtained appraisals for that purpose. Therefore, Aladdin argues, the Commission violated the United States and Iowa Constitutions by failing to award it "just compensation."

On remand, the district court found evidence that the County requested Aladdin to be out of the building within four months and that the County would pay for the dry cleaning equipment in the building. The court stated:

> The allocation of $51,065 for moving and relocation expense ignores substantial testimony regarding the various appraisals of the personal property which did not distinguish between movables and immovables; the uncontroverted testimony of Aladdin's representative that they attempted to ascertain whether the dry cleaning equipment would be free to be moved prior to their detrimental reliance on County statements; and the business realities faced by those holding property which the county seeks to acquire.

■■■ Under Iowa Code section 472.14, a compensation commission must consider three types of possible injury to personal property affected by condemnation of real estate: damage, destruction, or reduction in value. *Forst,* 209 N.W.2d at 6. Because this is a statute regulating the exercise of the power of eminent domain, it must be strictly complied with, and we will construe its provisions to protect the constitutional property rights of the owner. *City of Des Moines v. Geller Glass & Upholstery, Inc.,* 319 N.W.2d 239, 242 (Iowa 1982).

Aladdin argues the Commission acted illegally when it did not include an award for its dry cleaning equipment. The County argues that no award was due because it did not condemn the dry cleaning equipment and the condemnation did not damage or reduce the value of Aladdin's equipment, which was capable of being moved. The County also argues that even if its representatives did promise to buy the equipment, the Commission had no jurisdiction to consider such statements or enforce such an oral agreement.

■■■ We believe the district court was correct in concluding that the Commission's award did not consider all possible damages and that the award itself lacked evidentiary support. It is the duty of a compensation commission to consider all items of damage relating to the condemnation of real estate. *Wilkes v. Iowa State Highway Comm'n,* 172 N.W.2d 790, 794 (Iowa 1969). In *Aplin v. Clinton County,* 256 Iowa 1059, 129 N.W.2d 726 (1964), we stated:

> there must be a full, intelligent, and competent inquiry into the question of the individual's loss or damage; and that if the inquisition is executed in a deficient, incompetent, or negligent manner, so as to

show that the party's exposure to damages has not been properly inquired into, it does not meet the designs of the constitution and the law.

*Aplin,* 256 Iowa at 1066–67, 129 N.W.2d at 730 (quoting *Walters v. Houck,* 7 Iowa 72, 73–74 (1858)). Therefore, a compensation commission has jurisdiction to consider evidence that relates to possible damage, destruction, or reduction in value of a property owner's personal property. If a commission fails to engage in such an analysis, it has not satisfied the constitutional and statutory requirements.

Here, the record demonstrates that the Commission did not consider whether there was any damage, destruction, or reduction in value of Aladdin's dry cleaning equipment as a result of the condemnation. At the compensation commission hearing, the County stated it was condemning Aladdin's real estate and certain immovable fixtures, but that it believed $51,065 would adequately cover moving and relocation expenses for the dry cleaning equipment. However, the County obtained three separate appraisals of Aladdin's equipment and fixtures. The value or cost of the equipment ranged from $550,000 to over $1,000,000. Further, in two of the appraisals, there was no differentiation between movable equipment and immovable fixtures.

There is evidence in the record that Aladdin was told on numerous occasions that the County would buy its dry cleaning equipment as a part of the condemnation. Those who told Aladdin this included two of the appraisers and two representatives of the County. Furthermore, there was also evidence that Aladdin relied on those statements in making its business decisions, which included the purchase of equipment to meet its customer needs.

We conclude the Commission should have considered whether any damage to, or reduction in value of, Aladdin's dry cleaning equipment resulted from the condemnation of the real estate. Failure to do so deprived Aladdin of its right to "just compensation," as required by Iowa Code section 472.14.

## V. *Reduction of Value of Real Estate by Cost of Cleanup.*

The County offered evidence of the value of Aladdin's land and buildings through the testimony of expert real estate appraisers. The appraisers testified as to the fair market value of the property at the time of taking. They assumed the property was "environmentally clean" or "uncontaminated." It was their opinion that, if the property was contaminated, the value of the property would be reduced by the cost of cleanup, on a dollar-for-dollar basis, or more.

In addition, the County called a geologist who was employed by a company offering environmental services. He had reviewed the environmental reports indicating the presence of groundwater contamination in part of the block in which the Aladdin property is located. He testified there were two areas of contamination and four different types of contamination with varying concentration levels. He estimated the cost of cleanup of the block would be $561,000 and that, based on the percentage of land owned by Aladdin in the block, Aladdin's portion of the estimated cleanup cost would be $406,560. He did not determine who caused the contamination.

The Commission was advised that, after receiving the environmental reports on the block containing the Aladdin property, the County contacted the Iowa Department of Natural Resources (DNR). The DNR advised the County: "There is no reason why we cannot proceed with the condemnation of the building site and there is no reason why we cannot use the property for the purpose of building the jail."

The County argues the Commission lawfully considered evidence of contamination and cost of cleanup in its award of damages. It claimed it had a right "to introduce estimated costs of cleanup in order to establish the fair market value of a parcel of contaminated real estate." The County argues the Commission did not act illegally when it condemned and took into account the estimated cost of cleaning up the contamination on its property but in fact acted in a reasonable manner in determining the effect such contami-

nation would have on the fair market value of the property.

Aladdin argues the deduction of $135,000 for remedial cost was illegal because (1) evidence of contamination and remedial cost is procedurally inappropriate, (2) the administrative remedies must be exhausted before a reduction is allowed, (3) if the deduction is allowed, Aladdin could still be required to pay for cleanup cost, (4) the deduction for cleanup cost is premature because the DNR may require only that the property owner monitor the condition, (5) allowance of the deduction is unfair to the property owner because the award would not make the owner whole, and (6) the allowance of the deduction would deny equal protection to the owner because other property secured by the County from the same block was not required to pay the remedial costs.

In the supplemental report, the Commission stated it awarded $425,000 for real estate ($245,000 for land and $180,000 for buildings), $235,415 for immovable fixtures, and $51,065 for moving and relocating expense. From the total award of $711,480, the Commission deducted $135,000 (Aladdin's share of environmental cleanup cost), for a net award of $576,480.

The district court invalidated the award because the Commission reduced the value of the land by the estimated cost of cleanup. The court reasoned that "[q]uestions of contamination are relevant to land value. However, those questions should be addressed in an agency proceeding and the results used to influence the compensation given a landowner in an eminent domain proceeding." We agree the Commission's deduction of estimated cleanup cost deprives Aladdin of "just compensation."

The compensation awarded in an eminent domain proceeding becomes a substitute for the property taken. Before condemnation, the property owner holds the property at a certain fair market value, and the landowner, if the land is contaminated, has possible legal liabilities for the contamination. However, before a landowner is held responsible for cleanup cost in Iowa, an action must be brought by the DNR, Iowa Code §§ 455B.381–.399, or by a citizen, *id.*

§ 455B.111. To hold a property owner responsible for cleanup cost, the DNR or citizen must prove the owner generated the contamination. *Id.* § 455B.186; *see also Blue Chip Enters. v. Iowa Dep't of Natural Resources,* 528 N.W.2d 619, 627 (Iowa 1995). If this procedure is not followed and the value of the property condemned is reduced by the estimated cost of cleanup, the landowner will not receive just compensation because the award will be less than full value. In addition, the property owner will still have the same legal liability for cleanup cost as before.

The DNR is the state agency that prevents, abates, or controls water pollution and controls the exposure of citizens to hazardous conditions. Iowa Code §§ 455B.172(1), 455B.382. There is no evidence that the DNR determined that water pollution or hazardous conditions existed on the Aladdin property or that it or any other governmental body had incurred cleanup cost. Although a person having control over a hazardous substance is strictly liable for reasonable cleanup cost incurred, the liability for cleanup costs is imposed only upon the person who caused the hazardous condition. *Id.* § 455B.392(1)(a). This limitation also applies to administrative sanctions specified in section 455B.175. *Blue Chip Enters.,* 528 N.W.2d at 623.

Chapter 455B provides the proper procedure for the recovery of environmental remediation costs. If such cleanup costs are admissible and considered by a compensation commission without the procedural safeguards in chapter 455B, the procedural due process rights of the property owner are violated. A property owner has a right to have its liability established in a legal proceeding in which the owner has the opportunity to show that the owner did not cause the water pollution or hazardous condition. If the DNR or a citizen can prove the owner is legally responsible, and cleanup costs are incurred, such costs can be recovered from the owner after the condemnation proceeding has been completed. Iowa Code § 455B.111. This prevents condemnees from having their potential liability adjudicated in an eminent domain proceeding without the chapter 455B

safeguards. *See Department of Transp. v. Parr,* 259 Ill.App.3d 602, 198 Ill.Dec. 557, 561, 633 N.E.2d 19, 23 (1994) (admitting evidence of remediation cost at eminent domain proceeding deprives property owners of their rights and defenses under the Illinois Protection Act).

There are also policy considerations supporting the exclusion of evidence of contamination and the cost of cleanup. Admission of such evidence would require the parties to employ environmental experts qualified to testify as to the nature of the contamination, its concentration, and the methods and cost of cleanup. This would force the property owner to incur significant cost to counter the condemnor's expert testimony, which is provided by public funds.

The traditional expert testimony as to fair market value based on comparable sales would be unavailable in most instances because of the difficulty in locating "comparable" contaminated property sales. Properties with contamination are hard to compare because they involve multiple varieties of contamination of varying concentrations and require assorted methods of cleanup. The commission, judge, or jury required to determine "just compensation" would likely be compelled to speculate as to the damages. The admission of such evidence would spawn more litigation and would cause additional delay and expense, which serves neither judicial economy or finality.

In many respects the issue raised in this case is similar to that raised in *Henry* more than 140 years ago. In *Henry,* the railroad argued that after condemnation it would have a duty to build one-half of a fence along its right of way; therefore, the commissioners should deduct the cost to build the fence from the damage award. *Henry,* 2 Iowa (Cole) at 304. We stated:

[T]here is no reciprocal relation or obligation between the owner of the right of way and that of the fee, whereby either may compel the other to fence. If this is so, it follows that the *building of fence* is not necessarily an element to be taken into the minds of the commissioners in assessing damage. And it should therefore be excluded, because it tends to mislead the mind in arriving at just compensation. As soon as it is determined that *fence* must be paid for, the questions arise, what kind of fence? and who is to keep it in repair? shall it be board, rail or stone fence? shall the owner of the road keep it in repair, or shall the owner of the fee, or shall both share the burden? and so on, to utter confusion. Again: in many instances, fence may not be needed.

*Id.* at 306.

In *Henry,* the court approved the exclusion of evidence as to the cost of a fence because it was not certain that the railroad had a duty to fence one-half of the right of way, the type of fence was undetermined, and the need for the fence was not established. Here, it is not certain that Aladdin has a duty to clean up the contamination, the method and cost of cleanup is uncertain, and the need for cleanup was not established. As in *Henry,* a compensation commission would be misled in arriving at just compensation if evidence of contamination and cleanup costs were considered. If allowed, the award would be based on speculative information.

We are mindful that other jurisdictions have allowed evidence of contamination and the cost of cleanup to be admitted in an eminent domain proceeding. *See Redevelopment Agency v. Thrifty Oil Co.,* 4 Cal. App.4th 469, 5 Cal.Rptr.2d 687, 689 (1992) (remediation issue was properly considered where city took possession of gas station property and spent $182,000 to treat gasoline contamination); *Finkelstein v. Department of Transp.,* 656 So.2d 921, 925 (Fla.1995) (where owner is entitled to reimbursement of remediation costs, the condemned property should be valued as if the contamination cleanup had been completed, but testimony about contamination "stigma" and its effect on value is allowed); *Stafford v. Bryan County Bd. of Educ.,* 219 Ga.App. 750, 466 S.E.2d 637, 640 (1995) (the general environmental condition of the condemned property was a relevant factor in fairly assessing the market value); *City of Olathe v. Stott,* 253 Kan. 687, 861 P.2d 1287, 1289 (1993) (Kansas Storage Tank Act does not preempt general statutes regarding eminent domain; thus, evidence of contamination is admissible in an

eminent domain proceeding involving a determination of the fair market value of property taken); *State v. Brandon,* 898 S.W.2d 224, 227 (Tenn.App.1994) (evidence of contamination and cost of reasonable steps to remedy the contamination is admissible and relevant to issue of fair market value).

We also recognize that, in the determination of actual value of property for tax assessment purposes under Iowa Code section 441.21, evidence of contamination and estimated cost of cleanup is admissible as a factor that may affect market value. *Boekeloo v. Board of Review,* 529 N.W.2d 275, 278 (Iowa 1995). By statute, actual value of all property is the fair and reasonable market value. Iowa Code § 441.21(1)(b). "Market value" is specifically defined. *Id.* If market value of the property cannot be readily established, other uniform and recognized appraisal methods may be used by the assessor. *Id.* § 441.21(2). Here, the issue is "just compensation," not a determination of market value for tax assessment purposes.

VI. *Disposition.*

The district court invalidated the Commission award because it illegally failed to consider an award for dry cleaning equipment and illegally reduced the award for real property by the estimated cost of environmental cleanup. We affirm.

**AFFIRMED.**

All justices concur except HARRIS and LAVORATO, JJ., who concur in result, and CARTER, J., joined by LARSON and TERNUS, JJ., who concur in part and dissent in part.

CARTER, Justice (concurring in part and dissenting in part).

Although I agree with the decision of the court on the issues concerning valuation of the personal property, I strongly disagree with its conclusions concerning the effect of potential costs of environmental cleanup on valuation of the real estate.

Aladdin's stated grounds for relief on this issue in its certiorari action are predicated on matters affecting its own legal accountability for environmental cleanup costs. That is a matter foreign to and not bearing upon the valuation issues in this eminent domain proceeding that turn on the consequences of the contamination to a potential buyer. Consequently, these arguments should be rejected out of hand. Unfortunately, the opinion of the court not only does not reject these arguments, it actually gives credence to them.

What is really at issue here is the effect that the environmental contamination of Aladdin's property would have on the decision of a willing buyer to purchase it. The cost of cleaning up the contamination is only one element that a buyer would consider in this regard, but it is a very important element. A buyer would take this circumstance into consideration irrespective of whether it believed that it could be legally compelled to pay for that cost.

The issue was presented in the present case through the testimony of expert witnesses expressing the view that the market value otherwise existing for the property would be lowered by a half million dollars as a result of the cost of cleaning up the contamination. The commission evaluated this evidence and concluded that the value of the property would be lowered by $145,000 as the result of the cost required to eliminate the contamination. That decision was well within the commission's province. The evaluation of the unknown consequences of known facts is frequently required in determining real property valuations.

The 1856 decision in the *Henry* case to which the court makes reference is not persuasive authority for the position that the court now takes. Before the court in *Henry* made the statement that is quoted in the majority opinion, it had already determined that the railroad company was not required to fence the property under existing statutes. As an alternative argument, the railroad then contended that it could be compelled in a court of equity to pay for one-half of the fence. The court also expressed doubt as to that claim. The significant distinction between this case and *Henry,* however, is that in *Henry* the court was asked to accept the railroad's argument on faith. In the present case, the issue was developed through the testimony of expert witnesses. On what authority may an appellate court conclude that valuation witnesses may not be allowed to

**618**

base their opinions on facts that any knowledgeable buyer would take into account?

Generally, the measure of reasonable compensation in eminent domain proceedings is the property's reasonable market value at the time of the taking. *Heldenbrand v. Executive Council of Iowa*, 218 N.W.2d 628, 632 (Iowa 1974). This means the price the property would command in the market. *Comstock v. Iowa State Highway Comm'n*, 254 Iowa 1301, 1309, 121 N.W.2d 205, 210 (1963). The majority attempts to escape from the result that the law compels by suggesting that in this situation market value cannot reasonably be established. Whether that is the case is an issue of fact rather than an issue of law and is controlled by the testimony concerning the availability of market value. It is only when there is no market and no general buying and selling of the kind of property in question that resort must be had to other methods of valuation. *Id.* There is nothing in the present record that would suggest that this is the situation here.[1]

We recognized in *Boekeloo v. Board of Review*, 529 N.W.2d 275, 278 (Iowa 1995), that ordinarily market value for contaminated property can be established in the usual manner, *i.e.*, through the testimony of expert witnesses. The record in that case indicated that opinion evidence concerning the valuation of contaminated property is not only proper but that there are expert witnesses specializing in giving such opinions. I am unable to conclude that there was any illegality in the manner in which the compensation commission considered and acted upon consequences of environmental contamination. I would reverse that portion of the district court's judgment that granted Aladdin relief from the commission's determination of that matter.

LARSON and TERNUS, JJ., join in this partial dissent.

---

1. If, as the majority suggests, it is impossible to establish a market value for the property, the result should be a reliance on other valuation methods. But that is not what the opinion is advocating. It is suggesting that the property be valued based on what the market value would be if the contamination did not exist.